IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                              RESPONDENT

vs.                          Criminal No. 4:19-cr-40007
                             Civil No. 4:21-cv-04060

JAMES EARL BRADFORD                                                       MOVANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant is James Earl Bradford ("Bradford").  Bradford filed a *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 on September 17, 2021.  ECF No. 43.  Thereafter, Bradford was appointed counsel.  ECF No. 45.  Bradford, through counsel, filed a Supplement to the Motion to Vacate.  ECF No. 52.  The Government responded to this Motion on January 20, 2022.  ECF No. 53.  Thereafter, on September 7, 2022, the Court held a hearing to address this Motion.  ECF No. 71.  The Parties have filed post-hearing briefing.  ECF Nos. 72-73.

The Motion was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.  The Court has reviewed the Motion, the response, the testimony from the hearing, and the post-hearing briefing; and based upon that review, the Court recommends this Motion be **DENIED**.

**1.    Procedural Background[1]:**

In the present action, on May 8, 2019, Bradford was indicted on one count with a forfeiture allegation.  ECF No. 1.  Count One provided as follows:

COUNT ONE

> On or about April 11, 2019, in the Western District of Arkansas, Texarkana Division, the Defendant, **JAMES EARL BRADFORD**, did knowingly possess a controlled substance, namely more than 28 grams of mixture or substance containing cocaine base, a Schedule II controlled substance, with intent to

---
[1] The "Procedural Background" is taken from the pleadings and publicly filed documents in this case.

1

distribute that controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).

ECF No. 1 at 1.

On May 29, 2019, Bradford was arraigned on Count One and was appointed counsel, Jeff Harrelson, to represent him. ECF No. 6. On November 21, 2019, Bradford pled guilty to Count One of the Indictment. ECF No. 25. Bradford was still represented by Harrelson at the time of his guilty plea. As a part of this Plea Agreement, Bradford admitted to distributing crack cocaine in 2019:

> Investigators interviewed BRADFORD on April 11, 2019 following *Miranda* warnings. During the interview, BRADFORD admitted that his bringing crack cocaine from Texarkana, Arkansas, to Hope, Arkansas was a regular occurrence. BRADFORD estimated that he had delivered cocaine base to Hope around three times per month in 2019, prior to his arrest. BRADFORD stated the cocaine was normally "fronted" to him by his source of supply, describing a sort of consignment arrangement, in which the drugs were supplied to BRADFORD by the source, with the expectation that BRADFORD would in turn sell them to others, and then pay the source a portion of the proceeds. BRADFORD said his source expected BRADFORD to pay them $1,200 for each ounce of cocaine base he was fronted. BRADFORD stated that when he met his source to resupply, he usually brought them about $6,000 for the cocaine base he had previously been fronted. BRADFORD said he had been dealing with his source of supply for approximately two years, and added that the places they met varied, including residences, car washes and laundromats. Most of the time, BRADFORD said, his source fronted the cocaine to him already in the base form. However, BRADFORD said his source sometimes fronted him powder cocaine, which he then converted into cocaine base himself.

ECF No. 25 at 4-5.

Also, as a part of this Plea Agreement, Bradford waived appellate rights.[2] ECF No. 25 ¶ 8. Paragraph 8 specifically provided as follows: "In consideration of the promises and concessions made by the United States in this Plea Agreement, the Defendant knowingly and voluntarily agrees and understands the following appellate and post-conviction terms of this

---

[2] Bradford claims in his Motion that his "plea agreement contained no such appeal-waiver provision." ECF No. 43 at 7. This is simply not true. The Plea Agreement unambiguously contained a plea waiver. ECF No. 25 ¶ 8.

2

agreement: a. the Defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)." *Id.*

On February 21, 2020, the Final Presentence Investigation Report ("PSR") and Sentencing Recommendation were filed. ECF Nos. 31-32. In the Sentencing Recommendation, the United States Probation Office ("USPO") recommended Bradford be sentenced to 188 months. ECF No. 32. Thereafter, on March 5, 2020, Bradford, through counsel, filed a Motion for Downward Departure or Variance. ECF No. 34. In this Motion, Mr. Harrelson argued Bradford's personal circumstances and health mandated a downward departure or variance:

> James Earl Bradford is a 60-year-old father of 14 children who has lived in Texarkana, Arkansas for the past several years after living most of his life in Hope, Arkansas. He suffered a stroke on August 3, 2019, while in custody at the Miller County Detention Center while this case was pending. He spent time at Wadley Hospital recovering before returning to jail.

ECF No. 34 at 1.

On November 12, 2020, Bradford's sentencing hearing was held before the Honorable Chief U.S. District Judge Susan O. Hickey. ECF No. 40. Considering the motion by Bradford's counsel and the Government's motion for reduction (filed under seal) (ECF No. 38), Bradford was sentenced to 132 months in the Bureau of Prisons with credit for time served in federal custody and four years supervised release. *Id.*

On September 17, 2021, Bradford filed a *pro se* Motion to Vacate under 28 U.S.C. § 2255. ECF No. 43. Thereafter, Bradford was appointed counsel. ECF No. 45. Bradford then, through counsel, filed a Supplement to the Motion to Vacate. ECF No. 52. The Government responded to this Motion on January 20, 2022. ECF No. 53. On September 7, 2022, the Court held a hearing to address this Motion. ECF No. 71. The Parties have filed post-hearing briefing. ECF Nos. 72-73. This matter is now ripe for consideration.

**2. <u>Applicable Law</u>**:

A § 2255 motion is fundamentally different from a direct appeal. The Court will not reconsider an issue, which was decided on direct appeal, in a motion to vacate pursuant to § 2255. *See United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) ("Claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.").

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

**3. <u>Discussion</u>**:

With his Motion, Bradford raises one claim[3]: whether his attorney failed to consult him regarding an appeal and failed to appeal his conviction. ECF Nos. 43, 52. The Government has responded to this claim. ECF No. 53. This matter is now ripe for consideration, and the Court will only consider this claim.

**A. Ineffective Assistance of Counsel Standard**

As an initial matter, the Court must examine the standard for demonstrating ineffective assistance of counsel. The "benchmark for judging any ineffective assistance of counsel claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984).

---

[3] Bradford raised additional claims in his initial Motion. *See* ECF No. 43. However, based upon the representations of Bradford's counsel, the issue of whether Bradford was properly consulted regarding his appeal is the only issue with this Motion and before this Court.

To prove an ineffectiveness claim under *Strickland,* a movant must demonstrate (1) his or her counsel's performance was so deficient so as to fall below an objective standard of reasonable competence; and (2) that counsel's deficient performance prejudiced the defense. *See Toledo v. United States,* 581 F.3d 678, 680 (8th Cir. 2009) (citation and quotations omitted). The burden of proving ineffective assistance of counsel rests with the defendant. *See United States v. White,* 341 F.3d 673, 678 (8th Cir. 2003) (*citing United States v Cronic,* 466 U.S. 648, 659 (1984)).

### B. Whether Bradford Directed His Counsel to Appeal

In analyzing Bradford's claim, the first issue to address is whether Bradford specifically directed Mr. Harrelson to appeal his conviction. The Court recognizes "an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." *See Barger v. United States,* 204 F.3d 1180, 1181-82 (8th Cir. 2000).

In the present action, however, there has been no demonstration Bradford specifically instructed Mr. Harrelson to appeal his conviction. At the hearing in this matter, Mr. Harrelson testified Bradford never directed him to appeal his conviction. ECF No. 74 at 20:16-22. Mr. Harrelson testified as follows:

> Q: So in Mr. Bradford's case, do you have any recollection of Mr. Bradford expressing any confusion over his right to appeal or how long it will appeal or anything of that nature?
>
> A: No.
>
> Q: Do you have any recollection [of] Mr. Bradford, indicating to you an interest in appealing?
>
> A: No.

*Id.*

Bradford himself does not even claim he expressly directed Mr. Harrelson to appeal his action. He merely claims he *would have* directed Mr. Harrelson to appeal if Mr. Harrelson had communicated with him after sentencing. Bradford testified as follows:

> Q: So, do you remember when you would have talked about whether you appealed—you could appeal your case?
>
> A: No.—We didn't really discuss anything about an appeal, but—
>
> Q: But, your—going back to—did he meet with you at any point after you were sentenced about whether you should appeal your—
>
> A: No.
>
> Q: If Mr. Harrelson had asked you if you wanted to appeal your case, would you have said yes?
>
> A: Yes, ma'am.
>
> . . .
>
> Q: Did you try to call him yourself?
>
> A: No, ma'am.
>
> Q: Did you try to write him?
>
> A: No.
>
> Q: And he did not try to set up a call with you?
>
> A: No.

ECF No. 74 at 4:8-20, 5:4-9. Thus, because Bradford does not claim expressly directing Mr. Harrelson to appeal his conviction, the Court should not presume prejudice under *Barger*.

### C. Duty to Consult about Appeal or Duty to Appeal: *Flores-Ortega* Standard

Because Bradford did not specifically direct Mr. Harrelson to appeal his action, the next inquiry is whether Mr. Harrelson should have advised Bradford about his appellate rights after his sentencing hearing or should have appealed Bradford's conviction.

6

Based upon the testimony at the hearing in this matter, it is unclear if Mr. Harrelson specifically consulted Bradford regarding appealing his conviction after the sentencing hearing in this matter. *See* ECF No. 74. Notably, Bradford testified he did not recall meeting with Mr. Harrelson after the sentencing hearing:

> Q: Were you were able to speak to him during the hearing?
>
> A: I don't recall us talking afterwards.
>
> Q: You don't' recall talking after the hearing?
>
> A: No.
>
> Q: Did your attorney Mr. Harrelson meet with him after your sentencing?
>
> A; I don't remember us meeting after that.
>
> Q: You never saw him in person?
>
> A: No.
>
> Q: Did you speak with him on the phone at any point after?
>
> A: No.

ECF No. 74 at 3:14-24.

Mr. Harrelson also testified he was unsure if he specifically discussed an appeal with Bradford after the sentencing hearing in this matter. Mr. Harrelson testified as follows:

> And, having looked through my billing records, there was a .5 or half an hour that was spent outside of the sentencing hearing itself, part of that being with Mr. Bradford. Robin Gray, Judge Hickey's Courtroom Deputy, would put us into a private chat room or make me the administrator of the Zoom hearing once it was concluded. I don't have a specific memory when that private conversation with Mr. Bradford occurred the day of the sentencing hearing, but that's what my --- reflects is from November 12, 2020, that there was a half hour outside the sentencing hearing itself, at least part of that being with Mr. Bradford, but I don't know if it was before or after.

ECF No. 74 at 19:4-18. Because neither Bradford nor counsel has a specific recollection of the event, the Court will presume Mr. Harrelson did not specifically discuss an appeal after the sentencing hearing.

The remaining question is what level of consultation Mr. Harrelson was required to provide to Bradford after sentencing. Notably, there is no bright-line rule that counsel must always consult with the defendant regarding an appeal. *See Roe v. Flores-Ortega,* 528 U.S. 470, 480 (2000). Under *Flores-Ortega,* the two situations in which counsel has a constitutionally imposed duty consult with a defendant about his or her right to appeal occur when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* The Court will address both of these situations and determine whether they apply under these facts.

1. **Rational Defendant Standard**

The Court must first consider whether a rational defendant would want to appeal. Upon review of the facts in this case, the Court cannot find a rational defendant would want to appeal such that Mr. Harrelson was put on notice that he should have advised Bradford of his appellate rights after sentencing. The following five findings support that determination: (1) Bradford received a significantly reduced sentence; (2) Mr. Harrelson had previously advised Bradford of his appellate rights; (3) the plea agreement contained a waiver of appellate rights; (4) the sentencing court admonished Bradford regarding his appeal; and (5) Bradford has supplied no non-frivolous grounds for an appeal. The Court will consider each of these five findings.

First, Bradford received a very favorable result in his sentencing: he received a significantly lower sentence than what was recommended by the USPO in the Sentencing Recommendation. Instead of the recommended sentence of 188 months, he was sentenced to

8

132 months.  If Bradford had appealed his conviction, he was placing that favorable sentence at risk of reversal at the appellate level or was possibly risking additional charges.  *See, e.g., United States v. Cook,* No. 1:13-cr-10024, at *8 (W.D. Ark. Jan. 27, 2020) (holding a rational defendant would not have wanted to appeal because the defendant received such a favorable sentence).  *See also Witthar v. U.S.,* 793 F.3d 920, 925 (8th Cir. 2005) (recognizing "[t]he Government could seek to reinstate dismissed counts or bring additional charges related to defendant's underlying acts" if defendant disregards the appeal waiver and decides to appeal).

Second, Mr. Harrelson testified that, although he cannot specifically remember advising Bradford of his appellate rights *after* sentencing, he did advise Bradford of his appellate rights as a part of his representation of Bradford.  Mr. Harrelson testified as follows:

> Q:   And you've heard Mr. Bradford's testimony that he—at least agrees that some point your representation of him you explained to him that he had a right to appeal whatever sentence and the findings that Judge Hickey made at the end of this case, is that correct?
>
> A:   The first time we ever discussed appeal rights would have been when we're going through his plea agreement, which I've gone literally every single word of it with him to make sure he understood all parts of it, which would have included the waiver of his right to appeal under most circumstances, with the exception of a claim of ineffective assistance of counsel or sentence excess of statutory maximum.

ECF No. 74 at 17:8-19.  Bradford has not contradicted this testimony; instead, he claims he should have been further advised of his appellate rights after sentencing.

Third, the plea agreement Bradford freely and voluntarily signed included an appellate waiver.  *See* ECF No. 25.  As indicated above, as a part of this Plea Agreement, Bradford waived appellate rights.  ECF No. 25 ¶ 8.  Paragraph 8 specifically provides as follows: "In consideration of the promises and concessions made by the United States in this Plea Agreement, the Defendant knowingly and voluntarily agrees and understands the following appellate and

post-conviction terms of this agreement: a. the Defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)." *Id.* Certainly, a defendant who agrees to an appellate waiver as a part of his plea agreement would not have desired to be further advised of an appeal.

Fourth, during sentencing in this matter, Bradford was specifically advised of his appellate rights and his waiver of those rights. ECF No. 51 at 24:24-25:5. Judge Hickey's admonished provided as follows:

> Mr. Bradford, I need to tell you about your appeal rights. In paragraph 8 of your plea agreement, you waived the right to appeal both the sentence and the conviction you received in this case except under certain circumstances. If you do decide you want to appeal you must do so within 14 days of the entry of the judgment of this case which will be in the next day or two. So you got 14 days from judgment to appeal.

*Id.* In light of this admonishment, Bradford cannot now show he was unaware of the time-sensitive nature of an appeal or his immediate duty to notify his counsel through a letter or otherwise of his desire to appeal.

Fifth and finally, the Court has considered the record in this case and finds Bradford has presented no non-frivolous basis for an appeal. If Bradford could present a valid basis for an appeal, it might demonstrate a rational defendant would have wanted to appeal. *See U.S. v. Brown,* No. 4:04-cr-272 (E.D. Ark. July 16, 2007) (finding defendant's claim was frivolous such that a rational defendant would not want to appeal). Here, Bradford only provides a speculative claim on this matter: "there was available testimony to exonerate me, or at least partially exonerate me, it cannot be said that any appeal would have been frivolous and would have been an appeal that no rational defendant would have taken." ECF No. 43 at 7.

Based upon these findings, Bradford has not met his burden of demonstrating he—as a

rational defendant—would have desired to appeal to his conviction. Thus, the Court cannot find Mr. Harrelson had a constitutionally imposed duty to consult Bradford about his right to appeal after sentencing.

### 2. Demonstration of Desire to Appeal

The Court must also consider whether this particular defendant reasonably demonstrated to counsel that he was interested in appealing. If Bradford did demonstrate such a desire, Mr. Harrelson had the constitutional duty to advise Bradford of his appellate rights under *Flores-Ortega*.

Here, however, Bradford has admitted that he did not personally contact Mr. Harrelson after sentencing. Instead, the only evidence he has offered that he attempted to demonstrate he wished to appeal his conviction is from his fiancé. Notably, she testified the extent of her attempts were leaving messages for Mr. Harrelson:

> Q: . . . Ms. Walker, so it's your testimony that the only message that you left for Mr. Harrelson when you called on these occasions after the sentencing, was just to ask him to call you back?
>
> A: Yes, sir.
>
> Q: You didn't leave a message of, Hey, Mr. Bradford wants to file an appeal or anything like that?
>
> A: No, sir.
>
> Q: Just please call me back.
>
> A: Yes, sir.
>
> Q: And you called two times, is that correct?
>
> A: Yes, sir.
>
> Q: But you don't remember exactly when that was?
>
> A: No, sir.

11

> Q: It was after the sentencing?
>
> A: Yes, sir.

ECF No. 74 at 14:6-21. Such evidence is not sufficient to demonstrate Bradford, as this particular defendant, demonstrated his desired to appeal. Based upon this testimony, and the facts outlined above, the Court finds this is not sufficient evidence to meet Bradford's burden of demonstrating he is entitled to relief under 28 U.S.C. § 2255.[4]

**4.** **Recommendation**:

Accordingly, based on the foregoing, the Court recommends the Petition (ECF No. 43) be **DENIED.** The Court further recommends no Certificate of Appealability issue in this matter.

**The Parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court**. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**DATED** this **28th day of October 2022.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[4] Because Bradford cannot demonstrate his counsel's performance was deficient, the Court will not consider whether the second prong of *Strickland* (prejudice) was even met.

12